989 F.2d 493
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Stephen S. LOMAX, Plaintiff-Appellant,
v.
AMERICAN TELEPHONE & TELEGRAPH COMPANY, Defendant-Appellee.
 No. 92-1499.
 United States Court of Appeals,
Fourth Circuit.
 Argued: February 4, 1993
Decided: March 10, 1993
 
 Appeal from the United States District Court for the District of South Carolina, at Greenville. Henry Michael Herlong, Jr., District Judge. (CA-89-2926-6-20)
 John Roy Harper, II, JOHN R. HARPER, II, ATTORNEY AT LAW, P.A., Columbia, South Carolina, for Appellant.
 M. Susan Eglin, HAYNSWORTH, BALDWIN, JOHNSON & GREAVES, P.A., Greenville, South Carolina, for Appellee.
 Thomas A. Bright, HAYNSWORTH, BALDWIN, JOHNSON & GREAVES, P.A., Greenville, South Carolina, for Appellee.
 D.S.C.
 AFFIRMED.
 Before NIEMEYER and HAMILTON, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Stephen S. Lomax appeals the district court's decision ordering enforcement of a settlement agreement between Lomax and AT & T, his former employer.
 
 
 2
 Lomax claimed that the conditions of his termination by AT & T were racially discriminatory in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and the Civil Rights Enforcement Statute, 42 U.S.C. § 1981, and that AT & T interfered with his potential employment with Southern Bell in violation of § 1981. In addition, Lomax asserted a state-law defamation claim.
 
 
 3
 Following a directed verdict on a portion of his claims, Lomax, proceeding with counsel, agreed orally to enter into a settlement agreement with AT & T. He subsequently refused to accept the written memorialization of that agreement and consummate the settlement agreed upon. The district court rejected Lomax's assertion that the written memorialization was inconsistent with the oral agreement. Because there was ample evidence to support the district court's determination that Lomax voluntarily accepted an offer of settlement, through the duly authorized action of his attorney, we cannot say that there was an abuse of discretion in enforcing the settlement agreement. We, therefore, affirm the decision of the district court.
 
 
 4
 * Lomax, a black male, was originally employed as a Field Operations Material Handler by Southern Bell Telephone Co. In 1984, Lomax was transferred to AT & T in Greenville, South Carolina as part of large personnel changes brought about by AT & T's forced divestiture of its regional companies. Throughout Lomax's employment, he was represented by the Communication Workers of America. His employment conditions were based, in large part, on a Collective Bargaining Agreement (CBA) between AT & T and the Communications Workers of America.
 
 
 5
 In August 1988, as a result of divisional downsizing, some positions in Greenville were eliminated, including Lomax's. Under his CBA, Lomax was entitled to "bump" the least senior employee within his territory to avoid layoff. He bumped an employee in Columbia, South Carolina and was transferred there. He later bumped into a position in Atlanta.
 
 
 6
 On September 25, 1989, Lomax received a formal written warning regarding poor performance. According to AT & T, he had thirty-two "chargeable" absences, sixteen for sickness and sixteen for regular leave. AT & T's assertion was that these absences exceeded the leave and holidays permitted by the CBA. His supervisors testified that he was twice warned about his excessive absences. Despite this, according to AT & T, Lomax continued to take days off. Lomax disputed this, asserting that because AT & T had many more employees than it needed at the time, it was happy to have Lomax take unpaid time off.
 
 
 7
 On December 4, 1989, Lomax requested that he be allowed to leave the payroll, effective December 8, and collect separation benefits pursuant to a provision of the CBA. Lomax's supervisor testified that he informed Lomax that this would mean he was resigning in exchange for separation benefits. Lomax, both then and at trial, insisted that the CBA entitled him to "layoff" status which might entitle him to preferential rehiring in the future. When Lomax received his separation notice it indicated that the reason for the separation was that Lomax had resigned, as opposed to being laid off by AT & T. Lomax asserted that this was improper under the CBA and that white employees separated under similar circumstances were treated as having been laid off.
 
 
 8
 A few days after his "resignation," Lomax applied for employment with Southern Bell. On January 5, 1990, he received a letter indicating it could not offer him employment.
 
 
 9
 Lomax alleged that his initial removal from his position in Greenville and subsequent transfers to Columbia and Atlanta were racially motivated. In addition, he claimed that AT & T, as a result of a racially discriminatory animus, communicated false information to Southern Bell to interfere with Lomax's application for employment.
 
 
 10
 On November 2, 1989, Lomax filed this action. His supplemental and amended complaint was filed June 6, 1990. On December 18, 1991, the district court granted AT & T's motion for summary judgment on the state defamation claim on the grounds that the claim was preempted by the mandatory arbitration provisions of the Labor Relations Management Act, 29 U.S.C. § 185. The parties thereafter proceeded to trial. At the close of Lomax's case, the district court granted a directed verdict on Lomax's § 1981 claim alleging interference with his potential employment at Southern Bell on the grounds that there was no evidence that Southern Bell failed to hire Lomax as a result of any actions by AT & T.
 
 
 11
 After the district court dismissed this § 1981 claim, and before the district court proceeded to the remaining claims, AT & T offered Lomax, through his attorney, $10,000 to settle. Lomax refused this offer stating he would settle for nothing less than $20,000. Lomax's attorney then tried again to reach agreement and AT & T offered to settle for $20,000. Lomax asserts that his attorney forcefully advised him to take the offer and told him he had no chance of succeeding on the remaining claims. Lomax informed his attorney that he would accept the settlement offer. The parties then discussed the terms of the settlement agreement. The parties agreed that Lomax's personnel record would be changed to indicate his attendance was satisfactory and that he was laid off. Lomax requested that his layoff date be designated as later than his December 8, 1989 separation date. AT & T expressly rejected this term, apparently, because it might entitle Lomax to further separation benefits or preferential rehiring under the CBA.[1] All parties agree that Lomax then conferred with his attorney and told counsel for AT & T that he accepted the settlement offer.
 
 
 12
 AT & T subsequently sent Lomax a written representation of the settlement agreement. After the first draft of the settlement was presented to Lomax, he directed his attorney to ask AT & T again if the layoff date could be extended. This was done via a letter which stated that, in exchange, Lomax would agree he had no right to be rehired by AT & T. AT & T refused. Lomax, via another letter by his attorney, again reiterated that he wanted a later layoff date or he would not sign the settlement agreement.
 
 
 13
 AT & T then filed a motion to enforce settlement and the district court held a hearing on the matter. Counsel for AT & T and Lomax's trial counsel attended the hearing, in addition to Lomax's present attorney, who, at Lomax's behest, filed to substitute as his counsel. At the hearing both counsel for AT & T and Lomax's trial counsel informed the district court that the final written settlement agreement was consistent with the earlier oral agreement and that Lomax had agreed to the terms as provided in the final settlement agreement. Lomax conceded that he agreed orally to a settlement, one of the terms of which was that December 8 would be his layoff date; however, he argued that he never agreed he was not entitled to the benefits of a person on normal "layoff" status. The district court also heard from Lomax's new counsel and permitted him to file a brief concerning the motion to enforce the settlement agreement.
 
 
 14
 The district court granted AT & T's motion for enforcement on the grounds that Lomax understood the settlement agreement and authorized his attorney to enter into it. Subsequent dissatisfaction with his counsel's representation, or second thoughts, the district court noted, are not grounds for recision.
 
 II
 
 15
 We review a district court's order enforcing a settlement agreement for abuse of discretion. Lyles v. Commercial Lovelace Motor Freight, Inc., 684 F.2d 501, 504 (7th Cir. 1982).
 
 
 16
 On appeal, with respect to the settlement agreement, Lomax argues that there was no meeting of the minds on the material terms and conditions of the settlement agreement and that the letters exchanged between the oral agreement at the courthouse and the final written agreement constituted offers and counter-offers. Lomax also asserts that the settlement agreement was not intended to affect his layoff date, or other rights, under the CBA. He concedes that he originally agreed that his layoff date would not be changed, but he argues that this should have no effect on layoff rights, including the preferential right to be rehired.
 
 
 17
 As the district court noted, this case is similar to Petty v. Timken Corp., 849 F.2d. 130 (4th Cir. 1988), in which Petty agreed to accept a settlement and then, almost immediately, sought to back out, arguing that his counsel was ineffective and that he was improperly induced into the settlement. We affirmed the district court's order enforcing the settlement, stating:
 
 
 18
 When a litigant voluntarily accepts an offer of settlement, either directly or indirectly through the duly authorized actions of his attorney, the integrity of the settlement cannot be attacked on the basis of inadequate representation by the litigant's attorney. In such cases, any remaining dispute is purely between the party and his attorney.
 
 
 19
 Petty, 849 F.2d at 133.
 
 
 20
 Lomax's claim boils down to an allegation that his attorney misinformed him about the effect of the settlement or that he misunderstood the effects of the settlement. His attorney stated very clearly to the district court, and counsel for AT & T agreed, that the written settlement agreement was consistent with the terms the parties negotiated and agreed to in the courthouse. Mr. Lomax himself agreed that he discussed the settlement with his attorney and acquiesced in it.[2]
 
 
 21
 Lomax's assertion that there was no agreement and that the subsequent correspondence was a series of negotiations is revisionary and without merit. Lomax unequivocally conceded at the hearing that he entered into the settlement agreement on January 10. The subsequent correspondence, as Lomax's counsel told the district court, was merely to reduce the agreement to writing, and, to the extent it contained a request for a later layoff date, it was an attempt to revise the existing agreement.[3]
 
 
 22
 The fact that the settlement was later reduced to writing does not change the fact that the settlement was actually made on January 10. Written as well as oral settlement agreements may be enforced by either party, Alexander v. Industries of Blind, 901 F.2d 40, 41 (4th Cir. 1990), and the actual signing of the settlement document is a mere formality. Reed v. United States, 717 F. Supp. 1511, 1517 (S.D. Fla. 1988), aff'd, 891 F.2d 878 (11th Cir. 1990). Lomax's efforts to change the agreement by requesting a later layoff date were not counter-offers in a negotiation; they were requests to change an existing agreement. A party is not entitled to relief from an agreement with which he is no longer satisfied. See, Petty, 849 F.2d at 133.
 
 
 23
 Because there was ample evidence to support the district court's conclusion that Lomax voluntarily entered into the settlement agreement, as the written document memorialized it, we cannot say that the district court abused its discretion in enforcing the settlement agreement.[4]
 
 AFFIRMED
 
 
 [1]
 Apparently, under the CBA, a laid off employee is entitled to preferential rehiring at AT & T or its regional companies should a position become available during a two-year period following his layoff. This two-year term had already expired by the time of the settlement, hence Lomax's desire to have his layoff date changed. In addition, the CBA provided severance payments to employees depending on their date of separation
 
 
 [2]
 Lomax argues that he was not fully heard with respect to his objections to the settlement agreement. The district court, however, was not obligated to conduct a plenary hearing unless (1) the existence of the agreement was genuinely disputed, or (2) there was a genuine dispute about the attorney's authority to enter into the agreement. Id. at 132. Neither matter was genuinely in dispute
 
 
 [3]
 Lomax also argues that it was error for the district court to fail to allow him to substitute counsel before the hearing on the settlement agreement. As noted above, however, Lomax was not entitled to a plenary hearing and, in fact, the district court allowed Lomax's new counsel to brief the issue and be heard at the hearing on AT & T's motion to enforce the settlement. The district court withheld judgment until it considered the brief, thus giving Lomax the benefit of his chosen counsel
 
 
 [4]
 Because the settlement agreement disposed of all claims, we find it unnecessary to consider Lomax's remaining allegations of error. We regard Lomax's assertion that the settlement agreement did not dispose of all his claims to be without merit